FILED BY *BMW* D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
05 AUG -5 AM 10: 14
WESTERN DIVISION

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN MEMPHIS

| | |
|---|---|
| SCOTT SIDES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-2404 Ma V |
| ) | |
| VELSICOL CHEMICAL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Scott Sides ("Sides") brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. ("Title VII"), for hostile work environment discrimination and retaliation. Sides also brings state law claims of retaliatory discharge and negligent infliction of emotional distress. Before the court is defendant Velsicol Chemical Corporation's ("Velsicol") motion for summary judgment, filed on June 3, 2005. Sides filed a response on July 20, 2005. For the following reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

**I. Jurisdiction**

Because this case arises under federal law, the court has jurisdiction under 28 U.S.C. § 1331. The court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to adjudicate state law claims arising from a common nucleus of operative facts.

## II. Background

The following facts are undisputed or stated in the light most favorable to the Plaintiff. Sides, a Caucasian male, was employed by Velsicol as a chemical operator. (Sides Depo. at 42.) Because Sides' supervisors had a history of using profane language when addressing him, Velsicol's Human Resources Manager submitted a letter to Sides' union representative on May 10, 2000, stating that Velsicol would discipline any manager who communicated with Sides using a "verbal outburst." (Compl., Ex. C.)

On March 2, 2004, Sides met with his supervisor Johnny Donald ("Donald"), an African-American. (Sides Depo. at 47.) During the meeting, Donald called Sides a "stupid mother-fucker." (Id.) Donald repeated the epithet and then threw his clipboard 20 yards. (Id. at 60-61.) Charles Randall ("Randall"), an African-American chemical operator, was present. (Id. at 47.) When Sides asked Randall if he had heard Donald's insult, Randall replied "I didn't hear anything." (Id. at 64.) Sides replied "yes, you did." (Id.) Randall then "got chest to chest with [Sides] and put his finder in [Sides'] face and said, 'What are you going to do about it white boy'?" (Id. at 64-65.)

Sides reported Donald's abusive language to Bob Haney, Sides' immediate supervisor, and Lee Goodrich, an individual in management at Velsicol. (Id. at 70.) Later, on March 15, 2004, Sides submitted a written request to see his personnel file. (Id. at 99-100.) Sides was told that he could not see his personnel file because it was in Chicago. (Id. at 103.)

2

On March 23, 2004, Sides was admitted to Lakeside[1] for psychiatric treatment. (Id. at 15-16.) Sides' employment with Velsicol was terminated on March 24, 2004. (Hall Depo., Ex. 2.) Sides filed Charge of Discrimination forms with the EEOC on March 5, 2004, and April 28, 2004.

### III. Summary Judgment Standard

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party

---

[1] The full name of "Lakeside" is not in the record.

3

may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

## IV. Analysis

Sides' Complaint states Title VII claims against Velsicol for hostile work environment discrimination and retaliation, as well as state claims.[2] (Compl. at ¶ 1.) Velsicol's motion for summary judgment presents only two arguments: 1) that Sides' Title VII claims are barred because they are not within the scope of his EEOC Charge of Discrimination;[3] and 2) that there is no genuine issue of material fact about whether a hostile work environment existed at Velsicol and that summary judgment should be granted on this claim. (Def.'s Mem. in Supp. at 5-6.) Velsicol's motion does not address Sides' retaliation claim or his state law claims.

---

[2] Sides' response to Velsicol's motion for summary judgment implies that Sides is also claiming disparate treatment discrimination. (Pl.'s Resp. at 9.) Sides' Complaint, however, makes no mention of a disparate treatment claim.

[3] Velsicol ignores the fact that Sides filed two Charges of Discrimination.

4

## A. The Scope of Sides' EEOC charge of Discrimination

Title VII creates a cause of action for employment discrimination only after a plaintiff has pursued an administrative remedy, such as filing a Charge of Discrimination with the EEOC. 42 U.S.C. § 2000(e)-5(f)(1); Love v. Pullman Co., 404 U.S. 522, 523 (1972). The plaintiff's cause of action must fall "within the scope of the EEOC investigation that is reasonably expected to grow out of the charge of discrimination that was filed with the EEOC." Bray v. Palm Beach Co., 907 F.2d 150, 1990 WL 92672, at *1 (6th Cir. 1990) (citing EEOC v. McCall Printing Corp., 633 F.2d 1232, 1235 (6th Cir. 1980)). Courts are expected to construe administrative complaints liberally in determining whether a claim in a Title VII complaint was "reasonably expected to grow out of the charge of discrimination." Haithcock v. Frank, 958 F.2d 671, 675-76 (6th Cir. 1992). Liberal construction of the EEOC complaint is required because "technicalities are particularly inappropriate in a statutory scheme [like Title VII] in which laymen, unassisted by trained lawyers, initiate the process." Love, 404 U.S. at 527; see also Boykin v. Michigan Dept. of Corrections, 211 F.3d 1268, 2000 WL 491512, at *2 (6th Cir. 2000) ("[w]e may quickly dispose of defendants' scope argument, as we liberally construe the scope of a charge originally filed with EEOC").

Velsicol's argument that Sides' Title VII claims are not within the scope of his EEOC Charge of Discrimination consists of the following:

This case should be dismissed because the allegations in

5

> the Complaint exceed the plaintiff's allegations before the Equal Employment Opportunity Commission. In his EEOC Complaint, the plaintiff claimed that he was called a "stupid son-of-a-bitch." In the Complaint now pending before the Court, plaintiff claims that he was called a "stupid mother-fucker."

(Def.'s Mem. in Supp. at 7.) Velsicol also cites Nance v. Potter, 225 F. Supp. 2d 638 (M.D.N.C. 2002) in support of its position.

Substituting the phrase "mother-fucker" for "son-of-a-bitch" in Sides' EEOC Charge of Discrimination would not have changed the scope of the EEOC investigation "reasonably expected to grow out of the charge of discrimination." Although, in some contexts, the two phrases may convey substantially different messages, they are identical for purposes of an EEOC investigation of racial discrimination in violation of Title VII. Both are insults inappropriate in the work-place, and both are on their face race-neutral. Sides' inability to recall the precise insult allegedly directed at him by his supervisor in a stressful moment speaks to his credibility as a witness, not to the legal sufficiency of his claims.

Velsicol's citation of Nance does nothing to improve its argument. In Nance, the plaintiff alleged discrimination based on disability and retaliation in his EEOC Charge of Discrimination. Id. at 644-45. The court dismissed the plaintiff's Title VII claims because Title VII provides relief only from discrimination based on an individual's race, color, religion, sex, or national origin. Id. (citing 42 U.S.C. § 2000(e)-2). The Nance court concluded that, because Title VII does not provide protection for discrimination

6

based on an individual's disability, a Title VII claim was not within the scope of an EEOC Complaint that alleged only discrimination based on disability. Nance does not support Velsicol's argument that the scope of an EEOC investigation of a plaintiff's allegation that his supervisor called him a "stupid son-of-a-bitch" would be different from the scope of an EEOC investigation of a plaintiff's allegation that his supervisor called him a "stupid mother-fucker." The court denies Velsicol's motion for summary judgment on Sides' Title VII claims on the ground that they are outside the scope of his EEOC Complaint.

### B. Hostile Work Environment

Hostile working environment claims arise "where ... [qualifying] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (quoting 29 C.F.R. § 1604.11(a)(3)). To survive summary judgment a plaintiff must make out a prima facie case of hostile work environment racial discrimination. To establish a prima facie case a plaintiff must show: "(1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment and (5) defendant knew or should have known about the harassment and failed to take action." Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1078-79 (6th Cir. 1999).

Harassment is only actionable if it is "sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (citation omitted). Harassment claims are to be evaluated considering the totality of the circumstances. "[T]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether--taken together--the reported incidents make out such a case." Williams v. General Motors Corp., 187 F.3d 553, 562 (6th Cir. 1999). Conduct is actionable if it is either "sufficiently severe or pervasive." Meritor, 477 U.S. at 67 (emphasis added). There is not a threshold number of incidents below which a plaintiff fails to state a claim for harassment. Howley v. Town of Stratford, 217 F.3d 141, 154 (2nd Cir. 2000).

Relevant circumstances include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). The situation must be such that a reasonable person would consider it hostile or abusive. Id. at 21.

A representative Sixth Circuit case analyzing the legal sufficiency of a plaintiff's hostile work environment claim is Parks v. City of Chattanooga, 74 Fed. Appx. 432 (6th Cir. 2003). In Parks, the plaintiff "Parks alleged that [his supervisor] Lieutenant Fuson enforced the Department's facial hair policy

8

against him one time in a selective fashion; favorably falsified the statistics of a white officer so that he could grant that officer preferential job assignments; 'loaned out' Parks more than his fellow officers; and failed to offer Parks any seminar or training opportunities for two years." Id. at 441. The Sixth Circuit, assuming arguendo that the acts were racially motivated, stated: "[a]lthough Lieutenant Fuson's alleged conduct may have been impolite, inconsiderate, and even unfair, it did not rise to the level of the sort of severe or pervasive harassment that is actionable under Title VII [or § 1981]." Id.

Velsicol argues that summary judgment is appropriate because Sides has not satisfied prongs (3) and (4) of the prima facie test. Velsicol claims that the only incident of harassment based on race Sides has presented evidence of is Randall's statement "what are you going to do about it white boy?", and that this statement alone would be insufficient to affect a term, condition or privilege of Sides' employment.

Sides counters by stating that there is evidence of 7 acts of racially motivated harassment that taken together are sufficient for a jury to find that a term, condition or privilege of Sides' employment was affected. According to Sides, these 7 alleged acts of racially motivated harassment are:

(1) Randall calling Sides "white boy";

(2) Donald calling Sides a "stupid mother-fucker" and then throwing his clipboard;

(3) Velsicol's letter to Sides' union representative stating that managers would not use offensive language when speaking

9

with Sides

(4) The absence of an investigation by Velsicol's management into Donald's insult of Sides;

(5) Supervisor's joking about Donald's insult of Sides;

(6) Management's telling Sides that his personnel file was in Chicago;[4]

(7) Sides' being terminated for engaging in a protected activity.

(Pl.'s Resp. at 13-16.)

First, act (7), Sides' alleged termination for engaging in a protected activity is an act of retaliation, not an indication of a hostile work environment. Second, there is no evidence, beyond Sides' naked assertion in his response to Velsicol's motion for summary judgment, that acts (2) through (6) were racially motivated. As Velsicol argues, the only act of racially motivated harassment for which there is support in the record is act (1), Randall's saying to Sides "what are you going to do about it white boy?"

Sides' harassment at the hands of Randall, another chemical operator, was much less severe than the harassment suffered by the plaintiff in Parks at the hands of his supervisor. Even if the court were to assume arguendo that all of the alleged acts of harassment were racially motivated, the level of harassment would be less than that in Parks, in which the plaintiff alleged that he was given less desirable work assignments because of his race. The

---

[4] Sides alleges that this incident constituted racial harassment because it was a lie. (Pl.'s Resp. at 4.) There is, however, no evidence in the record showing that the file was not in Chicago.

racial harassment that Sides allegedly suffered was not sufficiently pervasive or severe for a jury to find that it altered a term, condition or privilege of Sides' employment.

Title VII is not a general code of conduct. Although the alleged behavior of several of the actors involved in this suit, if true, would be inappropriate in the workplace, Sides did not suffer a wrong for which federal law provides a remedy. Therefore, the court grants Velsicol's motion for summary judgment on Sides' Title VII claim for hostile work environment discrimination.

## V. Velsicol's Compliance With Local Rule 7.2(d)

Sides argues that Velsicol's motion for summary judgment should be denied "on account of Velsicol's wholesale noncompliance" with Local Rule 7.2(d)(2). (Pl.'s Resp. at 11.) Local Rule 7.2(d)(2) requires a party filing a motion for summary judgment to "designate in the accompanying memorandum by serial numbering each material fact upon which the proponent relies in support of the motion and [to] affix to the memorandum copies of the precise portions of the record relied upon as evidence of each material fact. If the proponent contends that the opponent of the motion cannot produce evidence to create a genuine issue of material fact, the proponent shall affix to the memorandum copies of the precise portions of the record relied upon as evidence of this assertion." Local Rule 7.2(d)(2).

It is not clear how Sides believes Velsicol has failed to comply with Local Rule 7.2(d)(2). Pages 1 through 4 of Velsicol's memorandum in support of its motion for summary judgment contain a

11

statement of facts in narrative form with citations to 13 numbered exhibits attached to the memorandum. Page 5 of the memorandum contains a serially numbered summary of five key facts on which Velsicol relies when making its arguments in the "argument and authorities" portion of its memorandum. Velsicol's memorandum is not in "wholesale noncompliance" with Local Rule 7.2(d).

## VI. Conclusion

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment on Plaintiff's Title VII claim for hostile work environment discrimination and DENIES Defendant's motion for summary judgment on the ground that Plaintiff's Title VII claims are outside the scope of his EEOC Charge of Discrimination. Plaintiff's Title VII claim for hostile work environment discrimination is DISMISSED.

So ordered this 4th day of August 2005.

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

12

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 55 in case 2:04-CV-02404 was distributed by fax, mail, or direct printing on August 8, 2005 to the parties listed.

---

Kathleen L. Caldwell
LAW OFFICE OF KATHLEEN L. CALDWELL
2080 Peabody Ave.
Memphis, TN 38104

Robert L. Moore
HEATON & MOORE, P.C.
100 N. Main St.
Ste. 3400
Memphis, TN 38103

Honorable Samuel Mays
US DISTRICT COURT